# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THO TRONG LE, | Civil No. 08cv1417 BEN (NLS) |
| Plaintiff, | **REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION TO DISMISS AND ORDER GRANTING REQUEST FOR JUDICIAL NOTICE** |
| v. | |
| M. RESLER, K. Grady, | |
| Defendants. | [Doc. No. 12] |

Tho Trong Le (Plaintiff), a California prisoner proceeding pro se and in forma pauperis, currently resides at Kern Valley State Prison. Complaint, p.1. On August 4, 2008 he filed a complaint under 42 U.S.C. § 1983 complaining of actions that occurred on December 3, 2005 while he was housed at Calipatria State Prison. *Id.* He alleges that defendants M. Resler, a Correctional Officer, and K. Grady, a Correctional Sergeant (Defendants), violated his eighth amendment rights.

Defendants filed a motion to dismiss the complaint on these bases: (1) Defendants are entitled to sovereign immunity where sued in their official capacities; (2) Plaintiff failed to exhaust the required administrative remedies under the Prison Litigation Reform Act (PLRA); and (3) the FAC fails to state a claim against either Defendant. Defendants also filed a request for judicial notice of several documents.

Defendants bring their motion to dismiss for lack of exhaustion of nonjudicial remedies through an unenumerated Rule 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20. Therefore, the parties may provide the

court with evidence to create an evidentiary record to help the court determine whether Plaintiff exhausted his nonjudicial remedies before filing suit.

Plaintiff's opposition to the motion was due June 11, 2009.  As of June 24, 2009, when the court had not received either an opposition from Plaintiff or an extension of time in which to file his opposition, the court sua sponte granted Plaintiff an extension until July 10, 2009 to file an opposition.  As of the date of this order, the court still has not received an opposition or any other pleading from Plaintiff regarding this motion to dismiss.

The court has reviewed all the pleadings and filings in this case, and for the following reasons, **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and **GRANTS** Defendants' request for judicial notice.

## REQUEST FOR JUDICIAL NOTICE

Defendants ask the court to take judicial notice of these court records:

**Ex. A:** Probation report filed October 1, 2008 in *People v. Tho Le*, case no. JCF-22139 (Imperial County Superior Court).

**Ex. B:** Abstract of Judgment--Prison Commitment, certified on September 4, 2008 in *People v. Tho Le*, case no. JCF-22139 (Imperial County Superior Court).

**Ex. C:** Abstract of Judgment--Prison Commitment, certified on June 23, 2003 in *People v. Tho Trong Le*, case no. 01WF2395 (Orange County Superior Court).

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  "A court shall take judicial notice if requested by a party and supplied with the necessary information.  Fed. R. Evid. 201(c). Documents that are part of the public record may be judicially noticed to show that a judicial proceeding occurred or that a document was filed in another court case.  *Wyatt v. Terhune*, 315 F.3d 1108, 1114, n.5 (9th Cir. 2003).  Factual findings from another judicial proceeding, however, cannot be admitted for their truth through judicial notice.

The court **GRANTS** Defendants' request and takes judicial notice of the existence of the probation report and abstracts of judgment in Plaintiff's state court actions.

# FACTUAL BACKGROUND

**The Events of December 3, 2005.**[1]

At around 2:30 p.m. on December 3, 2005, Plaintiff was in the medical holding cell of the Facility C clinic, waiting to be escorted back to his housing unit. Complaint, p.3. He was secured in mechanical restraints. *Id.* Officer Resler suddenly began assaulting Plaintiff from behind and slammed his face against the glass part of the door. *Id.* Resler then repeatedly punched Plaintiff in the face and ribs. *Id.* Correctional Sergeant Grady then joined in the attack. Grady grabbed Plaintiff around the neck and began to choke him. *Id.* at 4. As Plaintiff began to lose consciousness, Grady slammed Plaintiff's head into the wall. *Id.* Plaintiff lost consciousness and did not wake up until he was being transported in an ambulance to the prison's infirmary. *Id.*

Plaintiff was treated at the infirmary. *Id.* He suffered a busted nose and lips and a permanent injury to his left eye from the beating by Resler. *Id.* at 3. He also suffered from a hematoma on the back of his head and bruising and swelling on his face due to the attack by Grady. *Id.* at 4. Plaintiff sues Resler and Grady in their individual and official capacities. *Id.* at 2.

**Plaintiff's Efforts to Exhaust.**

Plaintiff deposited a 602 appeal form in the prison mail system on December 13, 2005. Complaint, p.6. Plaintiff later saw that no appeal log number was assigned to his complaint. *Id.* When he tried to obtain one, Plaintiff learned there was no record of his appeal being filed. *Id.* In 2006 Plaintiff sent several letters to prison officials asking about the status of his 602 form submitted on December 13, 2005. Complaint, Ex. A1, p.23. He tried to file four more duplicate appeals regarding the events of December 5, 2005. *Id.*; *see, e.g.,* Complaint, Ex. A1, pp.18-23. He sent the duplicate 602 complaints on February 9, April 12 and June 29, 2006, and January 2, 2007. Complaint, Ex. A1, p.21. In response to each inmate appeal, Plaintiff was told that the Inmate Appeals Office never received his 602 form submitted on December 13, 2005, so that consequently, each subsequent appeal was untimely. Complaint, Ex. A2, p.24.

---

[1] Because this case comes before the court on a motion to dismiss, the court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn from it, in the light most favorable to Plaintiff. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002).

**State Court Criminal Action.**

Plaintiff filed this suit on August 4, 2008. On September 3, 2008, Plaintiff pled guilty in the Imperial County Superior Court to one felony count of battery on a custodial officer. Request for Judicial Notice (RFJN), Ex. B. The battery occurred on December 3, 2005, and the identified victim was Officer M. Resler. RFJN, Ex. A. The trial court sentenced Plaintiff to a 16 month prison term to run consecutively after his current term of 20 years. RFJN, Exs. B, C.

## DISCUSSION

### I. Eleventh Amendment.

The eleventh amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir. 1989) (internal quotations omitted). Nor does it bar damages actions against state officials in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). The eleventh amendment prohibits only damages actions against the "official's office"–actions that are in reality suits against the state itself–rather than against its individuals. *See id.* at 26; *Will*, 491 U.S. at 71; *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

Here, Plaintiff sued Defendants in their individual and official capacities. Complaint, p.2. He asks for an injunction restricting Defendants from working for the California Department of Corrections and assaulting other inmates, and that no adverse actions or decisions be taken against Plaintiff. *Id.*, p.6. He also seeks $1,000,000 in damages. *Id.*

Because of the bar on damages actions against individuals acting in their official capacities, this court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED**.

### II. Exhaustion of Administrative Remedies.

#### A. The PLRA.

A prisoner must exhaust all administrative remedies before filing a suit under the PLRA. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Lira v. Herrera*, 427 F.3d 1164, 1169

(9th Cir. 2005). In a non-enumerated Rule 12(b)[2] motion to dismiss for failure to exhaust administrative remedies, defendants "have the burden of raising and proving exhaustion." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The defendant, and not the plaintiff, bears the burden of proving the plaintiff had available administrative remedies that he or she did not utilize. *Id.*

To show failure to exhaust, defendants may go outside the pleadings and submit supporting affidavits or declarations. *Id.* The plaintiff, however, must be provided an opportunity to develop a record to refute defendants' prima facie showing of non-exhaustion. *Id.* at 1120 n.14. In a non-enumerated Rule 12(b) motion to dismiss, the court may look at both parties' submissions outside the pleadings to resolve factual issues regarding exhaustion. *Id.*

The PLRA requires that a plaintiff exhaust only "available" administrative remedies. 42 U.S.C. § 1997(e)(a). For example, if an inmate's appeal is granted at a lower level, the inmate need not appeal to the next level because there is nothing left to exhaust. *See Brady v. Attygala*, 196 F.Supp.2d 1016, 1022-23 (C.D. Cal. 2002) (finding further exhaustion not required where appeal was granted at the second level); *Gomez v. Winslow*, 177 F.Supp.2d 977, 985 (N.D. Cal. 2001) (allowing an inmate to file suit where he had "won" his inmate appeal by receiving a "partial grant" at the second level). Also, refusing to give an inmate grievance forms could raise the inference the prisoner "exhausted" his administrative remedies. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003) (reversing a district court's dismissal of a section 1983 case because it did not consider Plaintiff's allegation that prison officials refused to provide him with the grievance forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (concluding that any remedy prison officials prevent a prisoner from utilizing is not an "available" remedy as section 1997(e)(a) defines that term).

**B.     The Exhaustion Process.**

"Any inmate . . . may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 § 3084.1(a). An inmate must complete the following steps to exhaust at the administrative level: (1) attempt to informally resolve the problem with the staff member involved, *id.* at § 3084.5(a); (2) submit a grievance on the

---

[2]Unless otherwise noted, all future references to "Rule(s)" refer to the Federal Rules of Civil Procedure.

CDCR inmate 602 form, *id.* at § 3084.5(b); (3) appeal to the institution head or his/her designee for a second level of review, *id.* at § 3084.5(c); and (4) appeal to the Director of CDCR or his/her designee for a third and final level of review, Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan*, 355 F.Supp.2d 1155, 1161 (S.D.Cal. 2004). Prisoners must submit their appeal within 15 working days of the event or lower decision being appealed. Cal. Code Regs. tit. 15 § 3084.6(c).

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules, including meeting deadlines and complying with other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). If a prisoner concedes that he or she did not exhaust, that concession is a valid ground for dismissal so long as no exception to exhaustion applies. *Wyatt*, 315 F.3d at 1120.

### C.     Plaintiff's Attempt to Exhaust.

Defendants move to dismiss this action because Plaintiff failed to exhaust his administrative remedies before filing this suit. Plaintiff alleges he complied with the exhaustion requirement because on December 13, 2005 he deposited in the internal prison mail system a 602 form regarding the December 3, 2005 incident. He says that he later learned the appeal was not received or assigned a log number. Plaintiff then filed four more appeals regarding the non-receipt of the December 13, 2005 602 form and the incident of December 3, 2005. While Plaintiff never filed an opposition to this motion to dismiss, the overarching theory Plaintiff alleges in his complaint is that his efforts to timely file a 602 form were thwarted. Defendants argue that even though Plaintiff was fully capable of filing a 602 form, he did not do so on December 13, 2005.

Plaintiff was housed in administrative segregation from December 3, 2005 to September 9, 2007. Edwards Decl. ¶ 6. During that time he submitted the following five inmate appeals to the Appeals Coordinator's Office:

1.     On March 21, 2006, Plaintiff complained that from the time he was placed in administrative segregation, he had not received a copy of his property inventory slip. The appeal was screened out the same day for Plaintiff's failure to provide sufficient information concerning his location before being transferred to administrative segregation. This was the first record of Plaintiff filing a 602 form while in administrative segregation. Edwards Decl. ¶ 8(a), Ex. B.

1       2.     On April 11, 2006, Plaintiff complained that he never received an incident report
2 regarding the rules violation report for the incident on December 3, 2005. The appeal was screened out
3 the same day because it was a request for information rather than an appeal of a decision or event. The
4 screen out letter told Plaintiff how to obtain a copy of the incident report. Edwards Decl. ¶ 8(b), Ex.C.

5       3.     On October 17, 2006, Plaintiff complained that the Third Watch staff in administrative
6 segregation had been intercepting Plaintiff's inmate appeals and tampering with his legal mail. Plaintiff
7 also alleged--for the first time--that he "began to submit 'a citizen complaint' on a CDC 602 against Sgt.
8 Grady and [Correctional Officer] Resler for beating [Plaintiff] while in handcuff[s]." The appeal was
9 screened out on October 19, 2006 for Plaintiff's failure to attempt to resolve the alleged problem at the
10 informal level of review. The Appeals Coordinator advised Plaintiff to obtain an informal response
11 from the mail room staff and then refile the appeal, if necessary. Edwards Decl. ¶8(c), Ex. D.

12       4.     Plaintiff submitted a second appeal on October 17, 2006, backdated to December 3, 2005,
13 to replace the inmate appeal that he allegedly filed on December 13, 2005. Plaintiff complained about
14 the beating and abuse he received by correctional officers on December 3, 2005. The appeal was
15 screened out on December 6, 2006 for too great a time lapse between the alleged event and the filing of
16 the appeal without any explanation for the time lapse. The Appeals Coordinator encouraged Plaintiff to
17 submit an explanation and supporting documentation for why he did not file the appeal earlier, and told
18 Plaintiff that even though it was untimely, the matter was referred for a fact-finding investigation.
19 Plaintiff never supplemented the appeal with an explanation or documentation. Edwards Decl. ¶8(d),
20 Ex. E.

21       5.     On November 6, 2007, Plaintiff complained that he did not receive his television set
22 when he was transferred from Calipatria to Kern Valley State Prison. The appeal was screened out on
23 November 8, 2007 for too great a time lapse between Plaintiff's transfer to Kern Valley State Prison and
24 the filing of the appeal without any explanation for the time lapse. The Appeals Coordinator
25 encouraged Plaintiff to submit an explanation and supporting documentation for why he did not file the
26 appeal earlier, and noted that when Plaintiff signed his property form on September 11, 2007, he did not
27 note that the television set was missing. Edwards Decl. ¶8(e), Ex. F.

28       The only appeal Plaintiff submitted that concerned the events of December 3, 2005 and was not

screened out was Plaintiff's complaint concerning the rules violation hearing and adjudication stemming from the events of December 3, 2005. Plaintiff was assessed 150 days of good-time credits for the events of December 3, 2005. The Office of the Chief Deputy Warden denied the appeal--at the second level of review--on September 4, 2007. Plaintiff did not proceed to the third level of review. Edwards Decl. ¶ 7(a), Ex. A.

The declarations filed in support of this motion to dismiss show that (1) Plaintiff did not submit a third level inmate appeal to the CDCR office against either of the Defendants in this lawsuit, or against any prison officer or official concerning any staff conspiracy to intercept Plaintiff's inmate appeals and tamper with his legal mail, Grannis Decl. ¶¶ 7, 8; and (2) after a search in the Inmate/Parolee Appeals Tracking System for all appeals Plaintiff filed from December 3, 2005, no appeal was properly submitted regarding an alleged beating by prison staff on December 3, 2005, Edwards Decl. ¶ 11. A review of Plaintiff's administrative complaint filing history reveals that he was able to, and not prevented from, filing 602 form complaints while in administrative segregation, and that the Appeals Coordinator promptly responded to those appeals and informed Plaintiff of their deficiencies. The filing history also shows that Plaintiff consistently failed to submit the grievances on time or with proper documentation, and that he failed to supplement his appeals for all times except for one. The history also shows that when Plaintiff did ultimately supplement his appeal, he failed to proceed to the final level of review to fulfill the exhaustion requirement.

In sum, Defendants submit sufficient evidence to show that Plaintiff did not comply with the requirement to exhaust all his administrative remedies regarding the December 3, 2005 event before filing this suit. This Court **RECOMMENDS** that Defendants' motion to dismiss based on exhaustion be **GRANTED**.

**III.     Rule 12(b)(6) Motion.**

Defendants also seek to dismiss Plaintiff's complaint on the ground that he fails to state a claim because his claims are barred by the favorable termination doctrine.

**A.     Legal Standard.**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must assume all material factual allegations of the

complaint and all reasonable inferences drawn from them as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Dismissal is proper only where there are insufficient facts to support a cognizable legal theory. *Navarro*, 250 F.3d at 732 (citation omitted).

### B. Favorable Termination Doctrine.

The "favorable termination" requirement applies to civil rights actions filed against state actors under 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 483-484 (1994). The *Heck* doctrine bars a plaintiff from suing, under any constitutional theory, for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff first "proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. "*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

*Heck* will not bar a § 1983 action where, if successful, the action would not show that a criminal judgment against the plaintiff was invalid. *Id.* For example, in *Smithart*, the plaintiff was convicted of assault for trying to run over law enforcement officers with his truck. *Id.* at 952-953. It was not until after the assault--when the plaintiff got out of his truck--that the officers tried to arrest him. *Id. Heck* did not bar the plaintiff's claim for use of excessive force during the arrest because a finding of excessive force in the arrest would not have invalidated plaintiff's conviction for the assault. *Id.* In other words, the facts leading to plaintiff's assault conviction differed from the facts surrounding his excessive force claim. *See id.*

To determine whether *Heck* bars a claim, "an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487 n.6). In *Cunningham*, for example, the court found that *Heck* barred the plaintiff's claims "because the complaint disputed several factual issues that the state jury had already resolved against him." *Id.* In *Cunningham*, the facts surrounding the plaintiff's felony murder and attempted murder convictions were

the same facts alleged in the plaintiff's excessive force claim. *Id.* The plaintiff's claims were *Heck*-barred because if successful, a judgment in the plaintiff's favor would have implied that his felony murder and attempted murder convictions were invalid. *Id.* at 1155.

Here, Plaintiff pled guilty to one felony count of battery on a custodial officer. RFJN, Ex. B. The plea was based on these facts:

> On December 3, 2005, Officer Bellah was escorting Inmate Le back to his assigned cell when Inmate Le received an envelope from another inmate. Officer Bellah ordered Le to surrender the envelope and Le refused. When Officer Bellah tried to get the envelope from Le, Le became resistant and tried to get away from Officer Bellah's grip. Officer Bellah then used physical force and put Le on the ground. Additional officers responded and Le attempted to kick them. Eventually Le was subdued and taken to the medical clinic to be evaluated. During the evaluation, Le kicked Officer M. Resler in the groin and deliberately struck Officer Resler with his head. Le was again taken to the ground by officers and eventually ceased his aggressive behavior.

RFJN, Ex. B. In this lawsuit, Plaintiff alleges:

> Officer M. Resler suddenly began assaulting Plaintiff from behind, causing his body and face to slam against the glass part of the door. As Plaintiff turned around, M. Resler then repeatedly struck Plaintiff . . . As a result of this unprovoked brutal attack, Plaintiff's nose and lips were busted and his left eye incurred permanent damages.
> \*\*\*
> Correctional Sergeant K. Grady joined in on the assault . . . Sergeant K. Grady grabbed Plaintiff around the neck and began to viciously choke him.

Complaint at 3, 4.

These two factual descriptions reference the same series of events. If Plaintiff is successful on his § 1983 claim that defendants Resler and Grady used excessive force on him, the finding would imply that Plaintiff's assault conviction is invalid. Further, Plaintiff's voluntary plea to an assault based on his initial aggression toward Officer Resler involved Plaintiff kicking in the groin and head beating Officer Resler, meaning Resler was in front of Plaintiff. This depiction of the facts is fundamentally incompatible with Plaintiff's current claim that Officer Resler engaged in a come-from-behind, unprovoked attack against Plaintiff. Based on the factual backdrop for Plaintiff's guilty plea, Plaintiff himself was the aggressor, and Defendants Resler and Grady responded to that aggression.

To now bring an § 1983 claim for excessive force based on these events, Plaintiff would first have to prove that his conviction was reversed, expunged by executive order, or that a federal court had

issued a writ of habeas corpus based on the conviction. Plaintiff has not done so. Applying the *Heck* bar, this court **RECOMMENDS** that Defendants' motion to dismiss for failure to state a claim based on the favorable determination doctrine be **GRANTED**.

## CONCLUSION

The undersigned Magistrate Judge submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Based on the foregoing, the undersigned magistrate judge **RECOMMENDS**:

1. Defendants' motion to dismiss for failure to exhaust and failure to state a claim be **GRANTED**.

2. No later than **October 2, 2009** any party to this action may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

3. Any reply to the objections shall be filed with the court and served on all parties no later than **October 9, 2009.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: September 9, 2009

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court